FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

2015 DEC 21 PM 4:08

| | |
|---|---|
| ARLA TWEEDY, individually and on behalf of all others similarly situated, | Case No. 6:15cv2148-orl-31KRS |
| *Plaintiff,* | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| FLORIDA ENERGY WATER & AIR, Inc., a Florida corporation, | |
| *Defendant.* | |

Plaintiff Arla Tweedy ("Plaintiff" or "Tweedy") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Florida Energy Water & Air, Inc. ("Defendant" or "Florida Energy") to stop its practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

## NATURE OF THE ACTION

1. Defendant Florida Energy & Water, Inc. provides air conditioning, insulation, air purification, solar energy, and bathroom remodeling services.

2. Unfortunately for consumers, Defendant Florida Energy casts its marketing net too wide in its effort to attract new business. That is, in an attempt to promote its business and to generate leads for its services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that repeatedly makes unsolicited calls to consumers' telephones, including cellular telephones and numbers that appear on the National Do Not Call Registry, without consent—all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227

(the "TCPA").

3. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the placement and receipt of such calls, a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, and a loss of the use and enjoyment of their cellphones, including the related data, software, and hardware components, among other harms.

4. The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

5. Plaintiff Arla Tweedy is a natural person and citizen of the State of Florida.

6. Defendant Florida Energy Water & Air, Inc. is a corporation incorporated and existing under the laws of the Florida with its headquarters located at 6505 Edgewater Drive, Orlando, Fl 32810. Defendant conducts business throughout this District, including Orange County, Hillsborough County, Brevard County, and Leon, Wakulla, and surrounding counties.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which is a federal statute.

8. The Court has personal jurisdiction over Defendant because it is located within

this District, solicits significant consumer business in this District, has entered into business to business contracts in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant solicits a significant amount of consumer business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

10. Defendant Florida Energy sells air conditioning, air purification, and water treatment services to name a few. Unfortunately for consumers, Florida Energy promotes its business by tricking customers into calling a toll free number, capturing their phone number, and then telemarketing to those leads without their express written consent—and oftentimes in violation of federal and state Do Not Call registries and the consumer's attempts to opt out of any future telemarketing calls.

11. On information and belief, Florida Energy sends postcards to new homeowners within their service areas. The postcards are vague and opaque in nature. Sample language of the post card is "2ND NOTICE TO PLEASE CALL Mrs. Miller. Recently, you received a notice that we have been unable to contact you by phone and would appreciate a call…Please call within the next 3 days and ask for Mrs. Miller at 1-800-688-1427." The postcards are otherwise blank and fail to indicate the company, utility, or governmental program with which they are associated.. Rather, the postcards are misleadingly designed to prompt the reader into thinking that some sort of vital service to their home would be shutoff if they do not call the phone number listed on the post card.

12. Consumers have complained online about these tricky tactics. A few sample public complaints available online are:

- "I just closed on a house last week and I got the same post card. I am glad that I googled it looking for the information as there was no company name on it and it looked shady. I have received another card with a local number on it as well. This 2nd notice postcard asked me to contact Ms. Miller."[1]

- "Just bought a house and just received this exact same post card - 2nd notice, call Mrs. Miller within 3 days at 1-800-688-1427. They really make it appear urgent- how deceitful."[2]

- "as a first-time home-buyer, this made me nervous (referring to the part where it says "2ND NOTICE" and "we've been trying to reach you"), I thought something had gone wrong and that it was legit- as I had literally JUST closed on the house within days prior to receiving this in the mailbox at my new home! I had not even moved in or started working on it yet at that time. That said, I thought being so fast it had to be someone who was involved in the mortgage, realtor, or title entities- and almost contacted them."[3]

- "Just moved in a new home last week - I received TWO post cards today - One said call Mrs. Miller @ 1-800-688-1427 the other similar looking card said call Mr. Grey @ 1-855-310-7256 - they both said call between 9am to 9pm 7 days a week and both said that was their 2nd notice to contact us."[4]

13. Unsuspecting customers call the phone number listed on the postcard and hear a message that says, "welcome to your new home offer" where Florida Energy will supposedly come to customer's home to test the tap water or do an energy audit, and in return the customer would receive a $50 gift card to the Home Depot

14. In reality, this is all a ploy to convince the consumer to make an appointment with Defendant so that Defendant can come to the consumer's house and pitch the consumer a range of products, including RainSoft water softeners and air purifier systems that cost thousands of dollars.

15. Additionally, when consumers call the number listed on the postcard to try to

---

[1] http://800notes.com/Phone.aspx/1-800-688-1427
[2] *Id.*
[3] *Id.*
[4] *Id.*

figure out the card's meaning and the business that sent it, Defendant captures all the incoming phone numbers (known as "number capturing"), stores the data in its lead database, and thereafter autodials such numbers to telemarket to them in the manner described above: Defendant calls to setup an appointment where Defendant will test the new consumers new home and pitch them water softeners and other expensive products.

16. In making the calls to consumers cell phones without their prior written express consent, Defendant used an autodialer in violation of the Telephone Consumer Protection Act.

17. Furthermore, Defendant calls these consumers who have no "established business relationship" with Defendant and who are registered on the Do Not Call list.

18. Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

19. In making the phone calls at issue in this Complaint, Defendant and/or its agent utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

20. Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF ARLA TWEEDY**

21.     On April 2, 2015, Plaintiff Tweedy registered her cellular phone number on the National Do Not Call registry to avoid receiving unsolicited telemarketing calls on her cellular phone.

22.     On October 21, 2015, after Plaintiff Tweedy received a suspicious postcard in the mail about her home's water quality, and she called the phone number listed on the postcard. She dialed the phone number 888-232-7348 and heard a pre-recorded message and realized it was not a governmental entity and that it was some sort of sales pitch so she immediately hung up and did not leave a voice message to be called back.

23.     On October 22, 2015, Plaintiff Tweedy received a call from Defendant Florida Energy from 941-727-7651 on her cellphone regarding testing her water system at her house. When she picked up the call, she heard a noticeable delay before being connected to the operator. Plaintiff Tweedy informed the caller: (1) that she was not interested in Defendant's products or services, (2) that she had never given Defendant permission to call her, and (3) that Defendant was not to call her again.

24.     On November 5, 2015, Plaintiff Tweedy received another call from Florida Energy from the phone number 941-727-0572. When she picked up this call she heard a noticeable, several second delay from the time she picked up until to the operator came on the line (typical of autodialer programs). She again informed the operator that she was not interested and that her cell phone number was registered on the do not call list and renewed her request to never be called by Defendant again.

25.     On November 13, 2015, Defendant called Plaintiff Tweedy again from the same phone number 941-727-0572. Defendant's agent or employee on the phone identified the company he was calling from as Florida Energy & Water. Plaintiff Tweedy told this telemarketer

that she had already requested not to be called by Defendant, that she is registered on the Do Not Call list, and she once again asked for Defendant never to call her again.

26.   Plaintiff does not have a relationship with Defendant, has never provided her consent to Defendant to call her or requested that Defendant place calls to her or offer her its services. Simply put, Plaintiff has never provided any form of prior express written consent to Defendant to place calls to her and has no business relationship with Defendant.

27.   Defendant is and was aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

## CLASS ALLEGATIONS

28.   **Class Allegations**: Plaintiff Tweedy brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and the three classes defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who (1) Florida Energy (or a third person acting on behalf of Florida Energy) called, (2) on the person's cellular telephone number, (3) for the purpose of selling Florida Energy's products and services, and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.
>
> **Autodialed Do Not Call Class**: All persons in the United States who (1) Florida Energy (or a third person acting on behalf of Florida Energy) called, (2) on the person's cellular telephone, (3) for the purpose of selling Florida Energy's products and services, (4) after the person informed Florida Energy that s/he no longer wished to receive calls from Florida Energy.
>
> **Do Not Call Registry Class**: All persons in the United States who (1) Florida Energy (or a third person acting on behalf of Florida Energy) called more than one time on his/her cellphone, (2) within any 12-month period, (3) where the cellphone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the purpose of selling Florida Energy's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

29. **Numerosity**: The exact size of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

30. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) Whether Defendant's conduct violated the TCPA;

    (b) Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

    (c) Whether Defendant made the calls with the use of an ATDS;

    (d) Whether Defendant systematically made telephone calls to consumers

        whose telephone numbers were registered with the National Do Not Call Registry;

(e)    Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct; and

(f)    Whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called from Defendant.

31.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

32.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

33.    **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

34.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of

this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court for each of the Classes. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227 *et seq.*
### (On behalf of Plaintiff and the Autodialed No Consent Class)

35. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

36. Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Class—without their prior express written consent—in an effort to sell its products and services.

37. Defendant failed to provide any of the language required to obtained prior express written consent under the TCPA, including a disclosure that the consumer was consenting to being called with an autodialer and/or that providing his or her cellphone number wasn't a requirement of purchase.

38. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

39. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

40. By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

41. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

42. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

### SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227 *et seq.*
### (On behalf of Plaintiff and the Autodialed Do Not Call Class)

43. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44. Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Class on their cellular telephone in an effort to sell its products and services *after* the person had informed Florida Energy that s/he no longer wished to receive such calls from Florida Energy.

45. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

46.     Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

47.     By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones after they requested to no longer receive calls, Florida Energy violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent.

48.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

49.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

### THIRD CAUSE OF ACTION
### Violation of 47 U.S.C. § 227 *et seq.*
### (On behalf of Plaintiff and Do Not Call Registry Class)

50.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

51.     The TCPA, specifically 47 U.S.C. § 227(c), provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

52.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons

who do not wish to receive telephone solicitations that is maintained by the federal government."

53.  47 C.F.R. § 64.1200(e), in turn, provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" (the "Report and Order").

54.  The Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

55.  47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential

subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

56. Defendant violated § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in § 64.1200(d)(3).

57. Defendant made more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Do Not Call Registry class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

58. Defendant also violated § 64.1200(d) by initiating calls for telemarketing

purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them, without training its employees or personnel in the use of its do not call list, and in not recording and honoring do not call requests.

59. Defendant further violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

60. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

61. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Arla Tweedy, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Arla Tweedy as the representative of the Classes and appointing her counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Classes;

4. An award of reasonable attorneys' fees and costs; and

5.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**ARLA TWEEDY**, individually and on behalf of all others similarly situated,

Dated: December 17, 15

By: /s Stefan Coleman
One of Plaintiff's Attorneys

Stefan Coleman
Law Offices of Stefan Coleman, LLC
201 S. Biscaynve Blvd, 28th Floor
Miami, Fl 33131
law@stefancoleman.com
(877) 333-9427

Steven L. Woodrow*
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com

*Motion for admission *pro hac vice* to be filed